WILEY W. MILLS, Appellee, vs. THE PEOPLES GAS LIGHT AND COKE COMPANY, Appellant.

*Opinion filed October 22, 1927—Rehearing denied Dec. 14, 1927.*

1. PUBLIC UTILITIES—*act of 1905, authorizing city of Chicago to fix gas rates, is void.* The act of May 18, 1905, authorizing the city of Chicago to fix the rates and charges for gas or electricity supplied to the city or its inhabitants, is void. (*Sutter* v. *Peoples Gas Light and Coke Co.* 284 Ill. 634, followed.)

2. SAME—*circuit court cannot fix gas rates.* The circuit court, in a proceeding by petition to review gas rates established by ordinance under the void act of May 18, 1905, has no authority, with or without regard to the statute, to fix rates pending final determination of the proceeding, as the authority to fix such rates is purely legislative in character, and the courts can only be empowered in proper cases, where the rights and interests of parties are actually before the court, to ascertain and deal with the reasonableness of rates already fixed.

3. STATUTES—*an unconstitutional act can have no effect as law.* An unconstitutional statute confers no rights, affords no protection, imposes no duties, and is, in legal contemplation, as inoperative as though it had never been passed.

APPEAL from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

COOKE, SULLIVAN & RICKS, (GEORGE A. COOKE, BOETIUS H. SULLIVAN, JESSE J. RICKS, and EDWARD H. FIEDLER, of counsel,) for appellant.

DONALD R. RICHBERG, (FRANCIS X. BUSCH, Corporation Counsel, and LEO J. HASSENAUER, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Peoples Gas Light and Coke Company, an Illinois corporation, and Wiley W. Mills, by their respective solicitors, on November 4, 1925, entered into an agreement in

which they recited that they had agreed upon the facts involved in a certain proceeding then pending in the circuit court of Cook county and desired to have the court render its decision upon the questions of law at issue between them. The agreed case was submitted in accordance with section 103 of the Practice act, and the court's decision thereon resulted in the rendition of a decree on July 8, 1926, requiring the gas company to pay Mills $1.10, the difference between $17.60, which he had paid for gas consumed during the month of July, 1912, and $16.50, which he would have paid in accordance with the provisions of an ordinance passed by the city council of the city of Chicago on July 17, 1911. From that decree the gas company prosecutes this direct appeal, the circuit court having certified that the validity of a municipal ordinance is involved and that the public interest requires that the appeal be taken directly to this court.

The agreed case, the abstract of which consists of 404 printed pages, arises out of a protracted litigation. To obtain an understanding of the controversy it will be necessary not only to set forth the material facts out of which the litigation grew but also the various steps taken in that litigation.

The Forty-fourth General Assembly passed an act entitled, "An act to confer upon the city of Chicago the power and authority to sell surplus electricity and to fix the rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city of Chicago and the inhabitants thereof," approved May 18, 1905. (Laws of 1905, p. 110.) The act provided that upon its adoption by a majority of the electors of the city voting upon the question at an election, the city of Chicago would be "empowered to prescribe by ordinance maximum rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to such

city and the inhabitants thereof. Such rates and charges to be just and reasonable and may be fixed for a period not exceeding five years and in case the corporate authorities of any such city shall fix unjust and unreasonable rates and charges, the same may be reviewed and determined by the circuit court of the county in which said city is situated." The question of the adoption of the act was submitted at a general election held in the city on November 7, 1905, and at that election a substantial majority of the votes cast upon the question was in the affirmative.

Pursuant to the act of May 18, 1905, the city council of the city of Chicago on July 17, 1911, passed an ordinance fixing the maximum rates and charges per thousand cubic feet of gas consumed for fuel, illuminating or power purposes during the ensuing five years at seventy-five cents for the first year, seventy cents for the second and third years and sixty-eight cents for the fourth and fifth years, with the proviso that an additional five cents per thousand cubic feet might be charged if the consumer failed to pay his bill within ten days after its delivery or presentation. The exaction of charges in excess of the maximum rates specified subjected the offender to a fine of not less than $25 nor more than $200 for each offense. This ordinance, by its terms, became effective on August 10, 1911.

On July 31, 1911, the Peoples Gas Light and Coke Company, appellant, filed its petition in the circuit court of Cook county, case No. 307,743, to review the rates for gas prescribed by the ordinance of July 17, 1911. In this petition appellant sets forth that its issued and outstanding capital stock is $35,000,000, and that the bonds, secured by mortgage liens upon its property, aggregate, in principal, $40,096,000; that in acting under the powers and privileges granted to it by its charter, appellant has acquired and owns lands, gas works, mains, pipes, feeders, service pipes, appliances and appurtenances, all of which are located in the city of Chicago; that it uses and operates up-

wards of 2600 miles of gas mains, to which are connected the necessary service pipes, meters and appliances for supplying gas to upwards of 525,000 consumers in that city; that the actual value of its physical property devoted to the use and convenience of the public in the production and distribution of gas to consumers in the city of Chicago is upwards of $70,000,000; that the rate of compensation expected and usually realized upon investments in corporations of a somewhat similar nature to appellant in the locality where it conducts its business is a minimum of seven per cent per annum; that for upwards of two years appellant has paid dividends at that rate upon its outstanding capital stock, and that the minimum annual net profit to which appellant is entitled, in view of the nature of its business and its inherent hazards and the competition to which it is subjected, which is constantly growing more keen, is that sum which will amount to seven per cent of the value of its property plus a reasonable sum by way of surplus. The passage of the ordinance of July 17, 1911, is alleged, the provisions of the ordinance are set out at length, and it is charged that the ordinance is unjust and unreasonable because the rates prescribed by it are insufficient to afford appellant a reasonable return upon the actual value of its property devoted to the public use. The petition further sets forth appellant's gross revenues, operating expenses, including taxes, the approximate depreciation owing to natural decay, wear, tear, obsolescence and inadequacy and its net returns for the years 1908, 1909 and 1910. It is charged that the city's agents appraised the value of appellant's property devoted to the public use and convenience at $51,575,678, and that this figure not only omitted items aggregating $11,300,000, but that it is considerably less than the value of the property appraised; that the actual value of appellant's property devoted to the public use is substantially in excess of the sum of the two preceding items, namely, $62,875,678; that except by an

abnormally low and unjust valuation of appellant's property it would have been impossible for the city's agents, in making their report to the city council, to recommend a rate for gas less than eighty cents per thousand cubic feet; that the shares of capital stock issued and the bonds assumed and guaranteed pursuant to agreements with companies merged into appellant, added to the money since actually expended upon its plant and property devoted to the public use, aggregate $76,385,734.69, and that if the rate prescribed for the first year of the five-year period defined by the ordinance had been effective, appellant would have received, after paying operating expenses and taxes and deducting depreciation, a net return for the years 1908, 1909 and 1910 of 3.92, 4.32 and 4.38 per cent, respectively. It is alleged that appellant has installed upwards of 525,000 meters, the average monthly gross income from which, for gas consumed, is $2.36 each; that from 51,555, or 9.82 per cent of these meters, the average monthly bill is $.3541, from 128,257, or 24.43 per cent, it is $.6573, and from 282,240, or 53.76 per cent, it is $1.1656, and that if the charge for non-payment of bills within a specified time should be reduced from ten to five cents per thousand cubic feet, it will not only be contrary to appellant's established rules and regulations for the last fifty years but it will also enormously increase the cost of doing appellant's business. The petition finally charges that it is the true intent and meaning of the act of May 18, 1905, that the city of Chicago should be empowered to prescribe by ordinance maximum gas rates for five-year periods and not varying rates for different portions of such periods. The prayer of the petition is that the court review and determine the rates prescribed by the ordinance, as provided by law, and to that end to make all such ancillary or other orders as shall seem meet and proper.

On appellant's motion, based on the petition, and upon notice to the corporation counsel of the city, Judge John

Gibbons on August 2, 1911, entered an order (1) that until final action by the court appellant should charge and collect for gas supplied from and after August 7, 1911, natural gas excepted, not to exceed eighty cents per thousand cubic feet, provided that appellant might demand and collect ten cents in addition for each thousand cubic feet of gas consumed or used for fuel, illuminating or power purposes if the consumer failed to pay his bill within ten days after its delivery or presentation; (2) that the city of Chicago, its officers, agents, servants and employees, and every person acting by the authority of the ordinance, and each of them, should be restrained from enforcing or attempting to enforce the ordinance of July 17, 1911, or any of its provisions, against appellant, and that for gas supplied during the period defined by the ordinance, appellant, its officers, agents, servants and employees, and each of them, should be enjoined from charging, accepting or collecting any sum in excess of the price. "hereinbefore specified;" and (3) that until final action by the court every consumer of gas paying eighty cents per thousand cubic feet, or the penalty of ten cents, or any rate in excess of the rates prescribed by the ordinance, should receive a refund of the excess paid over the rates so prescribed in the event that those rates should be finally adjudged to be just and reasonable. In compliance with that order appellant reduced its rate for artificial gas from eighty-five to eighty cents per thousand cubic feet and continued to make that charge until August 1, 1917. During that period appellant caused to be printed on each gas bill rendered by it, the statement, "Making net amount, at eighty cents (80¢) per M. cubic feet, as per order circuit court entered August 2, 1911, $........." After the order of August 2, 1911, was entered no further proceedings were taken in the cause until October 7, 1915.

Subsequently, on October 31, 1911, the city of Chicago filed its bill of complaint against appellant in the circuit

327—33

court of Cook county, case No. 309,569, in which the city alleged, among other things, that it was a consumer of gas manufactured and sold by appellant and that it sued on behalf of itself and all other local gas consumers; that no person, firm or corporation other than appellant was engaged in supplying gas by means of a system of mains and pipes laid in and under the streets, alleys and public grounds of the city; that the value of appellant's property devoted to the production and distribution of gas in the city did not exceed $45,000,000; that the rates prescribed by the ordinance of July 17, 1911, were just and reasonable; that before and after the passage of that ordinance, appellant, by its officers and agents, on numerous occasions admitted that eighty cents per thousand cubic feet of gas would afford appellant a reasonable return upon the value of its property devoted to public use. The city further alleged in its bill the filing of appellant's petition asking the circuit court to review the rates prescribed by the ordinance, and that the circuit court by its order of August 2, 1911, fixed the rate at eighty cents per thousand cubic feet during the pendency of the proceeding; that the circuit court was without right, power, jurisdiction or authority to hear or act upon that petition or to enter any injunction or restraining order upon it, and that all the proceedings had or taken in the cause were without prejudice to the rights of the city and the other local gas consumers. The city in its bill of complaint further alleged that appellant claimed that its petition was neither a suit at law nor in equity but that it was an anomalous statutory proceeding instituted under the act of May 18, 1905; that this act delegated to the circuit court legislative powers to prescribe reasonable maximum rates and charges for gas in case those fixed by the city council were unjust and unreasonable, and that appellant was required by law to file the petition and to have the circuit court review the rates and charges and determine what they should be before appellant could proceed to at-

tack or question the reasonableness of the rates and charges prescribed by the ordinance of July 17, 1911, in any court of competent jurisdiction. The city, however, averred that the act only confirmed the existing power of the circuit court to review and determine whether the rates and charges prescribed by the ordinance were just and reasonable and if unreasonable to set them aside, but that the act did not confer upon the court authority to fix or prescribe new rates and charges; that the proceeding to review rates and charges should be by a bill in chancery, with proper parties complainant and defendant, and that all the rights of appellant and its stockholders to have the gas rates reviewed and determined could be heard and adjudicated and the protection to which they were entitled could be afforded them in the instant suit. The city further alleged in its bill that appellant had threatened if on a hearing upon its petition the court should determine that the rates prescribed by the ordinance were reasonable or should fix different rates unsatisfactory to the appellant, that it would then file its bill in chancery in some court of competent jurisdiction attacking the ordinance or the court's order, as the case might be, assigning as grounds therefor that the rates so prescribed were unjust and unreasonable; that the enabling act of May 18, 1905, purporting to authorize the city to fix maximum rates for gas, was unconstitutional, and that the ordinance of July 17, 1911, in consequence, was invalid. The city further alleged in its bill that appellant had the right at any time to withdraw or to dismiss its petition, and that the city and other gas consumers were entitled to have the question of their right to enforce the ordinance against appellant conclusively determined in a suit, in which any decree that might be rendered would be binding upon the parties and a bar to any other suit or proceeding involving the same issues. The prayer of the city's bill was for an order, upon the filing of the bill, restraining appellant from charging in excess

of eighty cents per thousand cubic feet of gas consumed, and requiring it to pay to the clerk of the court, or to some person to be named by the court, all money that might from time to time be collected by appellant in excess of the maximum rates prescribed by the ordinance, such money to be held subject to the court's further order; for discovery of appellant's property, its cost and value, the amount of appellant's outstanding securities and the considerations received therefor, and appellant's income and expenses; for an order directing appellant to allow the city's agents to examine its books, records and papers and to make copies thereof, and to have access to and to examine the physical property used in appellant's business, and for a permanent injunction restraining appellant from violating the ordinance of July 17, 1911.

Shortly thereafter the city amended its bill, amplifying certain allegations originally made. Appellant demurred to the bill as amended, assigning as a special cause therefor the pendency of its petition to review the rates fixed by the ordinance. Upon overruling the demurrer Judge Kickham Scanlan on November 14, 1911, filed an opinion in which he said: "It will at once be noted that the former suit pleaded is not between the same parties as are involved in the present proceeding. The city of Chicago not being a party to the petition proceeding, as a matter of right could take no part in the proceedings, could not ask for a change of venue, nor could it question the jurisdiction of the court or the constitutionality of such petition, nor could it raise any objection to the sufficiency of the so-called petition. It could not file a cross-bill asking for affirmative relief. Its legal representative, as a matter of right, could take no part in any hearing of evidence or offer evidence to rebut that presented by the petitioner. No matter what judgment was rendered, the city, not being a party to the proceedings, would have no right to appeal."

On November 11, 1911, appellant filed its bill of complaint against the city in the circuit court of the United States for the northern district of Illinois.    In this bill appellant set forth the proceedings in the two cases pending in the circuit court of Cook county, alleged the unconstitutionality of the act of May 18, 1905, and the invalidity of the ordinance, and prayed an injunction against the enforcement of the ordinance.    On the filing of the bill a restraining order was entered.    Subsequently, on December 4, 1911, appellant's motion for a preliminary injunction was denied and the restraining order was vacated.

Upon the bill filed by the city, Judge Scanlan on December 5, 1911, enjoined appellant from charging or receiving in excess of eighty cents per thousand cubic feet for gas supplied to consumers in the city, and required appellant to impound with the Central Trust Company, as trustee, all money collected by it above the rates prescribed by the ordinance.    From this order appellant prosecuted an appeal to the Appellate Court for the First District.    In the city's brief upon the appeal the corporation counsel said of the petition filed by appellant on July 31, 1911: "The gas company was the only party to that petition.    There was no defendant thereto.    There was nothing to prevent the defendant from rejecting the order and dismissing the petition.    The city was all the while insisting that the circuit court had no jurisdiction or authority to entertain the petition or to enter any order thereon."    The Appellate Court on April 25, 1912, reversed the order granting the preliminary injunction, and on April 29, 1912, the circuit court, pursuant to the Appellate Court's mandate, dissolved the injunction and directed the Central Trust Company to return to appellant the money which it had received from appellant in obedience to the order of December 5, 1911.

Appellant on December 14, 1911, filed its answer to the city's bill of complaint.    In this answer it denied the material allegations of the bill and averred the unconstitu-

tionality of the act of May 18, 1905, and the invalidity of the ordinance of July 17, 1911. Exceptions were taken by the city to portions of the answer, and certain of these exceptions were sustained. On May 4, 1912, the city filed additional amendments to its amended bill of complaint, amplifying its allegations concerning the passage by the General Assembly of the act of May 18, 1905, the adoption of the act by the voters of the city of Chicago, and the necessity of an examination of appellant's books and records to enable the city to prepare for trial. Shortly thereafter appellant filed its amended answer to the bill.

Pursuant to a request by the city council committee on gas, oil and electric light, the corporation counsel and his assistant on March 28, 1914, made a report upon the status of the city's suit, in which, among other things, they said: "We recently had an interview with Prof. Bemis with the purpose of ascertaining his views in respect to the probability of sustaining the reasonableness of the rates for gas prescribed in the ordinance of July 17, 1911. Prof. Bemis stated that during the winter of 1912 and 1913 the price of oil had materially increased, and as about four gallons of oil were used in the manufacture of one thousand cubic feet of gas of the kind manufactured by the gas company, a substantial increase in the cost of manufacturing gas had resulted, and that this, together with other facts which had developed since the passage of the ordinance, might make advisable a further consideration of the rates prescribed in said ordinance. Turning now to the inquiry as to the policy of this department with reference to the future prosecution of the suit, we beg to say that in view of the present uncertainty as to the city's powers in respect to fixing gas rates, resulting from the passage and going into effect of the State Public Utilities Commission law, and, further, in view of the justifiable expectation that the present State Public Utilities Commission law will be amended so as to provide for home rule and control by the city of

Chicago of public utilities within the city and so as to give the city a much wider range of power in respect to public utilities than it has heretofore enjoyed, and, further, in view of the large expense that would be incurred by the city in prosecuting the suit under the conditions mentioned, we are constrained to the opinion that it would not be advisable to press the prosecution of the suit at this time."

In July, 1915, a special committee of the city council on gas litigation was created. The committee employed counsel, who in September of the same year made a report to the committee, in which, among other things, he said: "There are certain preliminary legal questions which should have been determined long ago: (1) The constitutionality of the law of 1905 granting the city of Chicago the power to regulate gas rates; (2) the validity of the ordinance of 1911 as an act in conformity with the power granted to the city. * * * These preliminary questions should be immediately fought out, so that the city and gas company may be at issue in either the State or Federal court upon the reasonableness of the rates fixed in 1911. If in the lower court (either Federal or State) one of these vital preliminary points should be decided against the city, the sooner such an adjudication is had and a ruling on appeal in the court of final jurisdiction the sooner will the city and gas consumers learn the strength of their case and be able to determine the amount of expenditure justifiable in its prosecution."

On October 7, 1915, the city by its special counsel filed an answer and a cross-bill in case No. 307,743. By the answer the city denied the material allegations of appellant's petition. Appellant filed a replication to this answer. In its cross-bill the city set forth the passage of the act of May 18, 1905, its adoption by popular vote in the city of Chicago and the passage of the ordinance prescribing maximum gas rates and affirmed the justness and reasonableness of those rates. The city charged that it had been denied

access to appellant's books, records and data, and that such access was necessary to ascertain the value of appellant's property, the cost of labor and materials involved in the production and distribution of gas, as well as appellant's receipts from the sale of gas and its disbursements. The city alleged that appellant had charged excessive rates for gas since August 11, 1911, and that such excess collected from upwards of 550,000 consumers amounted to more than $10,000,000; that appellant had never rendered a statement to the court showing the amount of such excess payments, nor had it ever furnished any security for their re-payment in the event the rates prescribed by the ordinance should be found to be just and reasonable; that the city was one of the largest consumers of gas and paid appellant upwards of $200,000 annually; that the city and the other gas consumers in Chicago were wholly dependent upon appellant for their supply of gas for light, heating and power purposes; that the city filed the cross-bill in behalf of itself and all other gas consumers since their rights with respect to the enforcement of the ordinance and the recovery of the excess collected were identical, and that these questions could and should be determined in case No. 307,743, wherein the city was cross-complainant. The prayer of the cross-bill was for an injunction restraining appellant from violating the ordinance, for discovery touching the matters charged, and for an impounding of the excess charges, or in lieu thereof for bonds to secure their re-payment.

On October 8, 1915, the city made a motion to transfer case No. 307,743 from the law to the chancery division of the court. Judge Gibbons, by an order entered on November 5, 1915, denied the motion and referred the petition to a special commissioner to take evidence respecting the reasonableness of the rates prescribed by the ordinance and to report the evidence with his findings of fact and conclusions of law. On the day that order was entered appellant

made a motion to strike the city's cross-bill from the files
of the cause, and special counsel for the city presented to
Frederick A. Smith, the chief justice of the circuit court,
his petition for the transfer of the cause from the law to
the chancery division of the court and for a prompt hear-
ing and adjudication of the issues raised. Three days later,
by an order entered November 8, 1915, Judge Gibbons held
that the petition was purely a statutory proceeding to ascer-
tain whether the rates prescribed were just and reasonable,
and he denied the motion to strike the city's cross-bill but
struck the confederating and interrogating parts and the
prayer for relief and process therefrom and allowed the
charging part and statement of facts to stand in the nature
of an answer to the petition. The order required appel-
lant to produce before the special commissioner to whom
the cause had been referred, books, documents and papers,
and permitted either party to offer the evidence of such
experts as might be agreed upon or as the commissioner,
with the approval of the court, might designate. The spe-
cial commissioner set the cause for hearing on November 9,
1915. At that time counsel for the city formally objected
to the hearing on the ground that if the proceeding, as
held by Judge Gibbons, was neither at law nor in chancery
but was wholly statutory, then the proceeding, and all the
orders entered therein, were void. Counsel for appellant
at the same time insisted that the act of May 18, 1905,
had never been passed by the General Assembly, and that
the city had no power to prescribe rates to be charged
for gas.

By an order entered by the chief justice of the circuit
court on January 4, 1916, case No. 307,743 was trans-
ferred from the law to the chancery side of the court
and the cause was re-assigned for hearing. Appellant
made a motion to vacate this order, but the motion was
denied. On January 6, 1916, the city made a motion
to vacate the orders of November 5 and November 8,

1915, and on February 7, 1916, by an order entered by the chief justice, the motion was granted and appellant was required to demur, plead or answer the city's cross-bill within twenty days. A motion was made by appellant to set aside the order vacating the orders of November 5 and November 8, 1915, but this motion was denied. Upon the city's motion two orders were entered in case No. 307,743 on March 24, 1916, one requiring appellant to permit the city to enter upon and inspect appellant's buildings and other property for the purpose of making appraisals, and the other requiring appellant to give the city access to appellant's books, records and papers showing its capital investment utilized in, and the cost of, the manufacture and distribution of gas.

No further proceedings appear to have been taken either by appellant or the city until January 7, 1918, when appellant filed its cross-bill in the city's suit, case No. 309,569. In its cross-bill appellant alleged that the act of May 18, 1905, had never been validly passed by the General Assembly and that it was unconstitutional for various reasons. The prayer of the cross-bill was for a decree adjudging the act void and enjoining the enforcement of the ordinance and the collection of the difference between the maximum rates fixed by the ordinance and the rates charged by appellant. On January 16, 1918, the city made a motion to dismiss both the bill and cross-bill in case No. 309,569, but the motion was denied by Judge Thomas G. Windes.

Appellant on February 4, 1918, moved to dismiss its petition filed July 31, 1911. Judge Merritt W. Pinckney denied this motion and set the cause for hearing on April 8, 1918. On February 11, 1918, appellant made a motion for leave to amend its petition. By the proposed amendments appellant sought to make the petition conform to a bill in chancery and to make the city a defendant thereto; to charge that the act of May 18, 1905, had never been

passed, that it was unconstitutional, and that the ordinance was unauthorized; and to seek a decree declaring the act of May 18, 1905, unconstitutional and the ordinance invalid, or if the court should hold the act valid and the ordinance authorized, then that the court review the rates prescribed by the ordinance and declare them to be unjust and unreasonable and the ordinance inoperative, and that the enforcement of the ordinance and the collection of the excess charged by appellant during the five-year period covered by the ordinance be enjoined. Leave to file either the motion or the proposed amendments was denied.

The city on February 16, 1918, made a motion, first, to vacate the order entered in case No. 309,569 on January 16, 1918, overruling its motion to dismiss the bill and cross-bill; and second, to dismiss the bill and cross-bill for the reason that the city "no longer desires to prosecute the bill of complaint herein." This motion resulted in an order by Judge Windes on February 28, 1918, in case No. 309,569, consolidating it with case No. 307,743.

On April 8, 1918, appellant filed a petition in case No. 307,743 for a change of venue from Judge Pinckney. The prayer of the petition was granted and the cause was re-assigned to Judge Oscar M. Torrison for trial. Appellant renewed its motion to amend its petition in case No. 307,743 by inserting allegations that the General Assembly had not, in fact, passed the act of May 18, 1905; that the act was unconstitutional for various reasons; that the ordinance was void; that the city had no power to regulate the rates to be charged for gas, and that the rates prescribed by the ordinance were confiscatory and deprived appellant of its property without due process of law. Judge Torrison on May 1, 1918, denied leave to amend the petition in the particulars stated, on the ground that appellant, by filing its petition under the act of May 18, 1905, asking the court to review the reasonableness of the rates fixed by the ordinance and upon its motion procuring an

injunction against the city and consumers restraining the enforcement of those rates and authorizing appellant to collect eighty cents per thousand cubic feet during the pendency of the proceeding, recognized the validity of the statute, and for that reason should be held to be estopped from alleging or proving its unconstitutionality.

On June 6, 1918, appellant made a motion in case No. 307,743 to refer it to a master in chancery for the purpose of taking the evidence and reporting it with his conclusions of law and fact. The motion was denied and the cause was set for hearing before the court. Subsequently, on October 24, 1918, appellant made a motion in the same case for a final decree, either making the injunction permanent and dismissing the city's cross-bill, or dismissing the entire suit for want of jurisdiction. This motion was denied by Judge Torrison on April 11, 1919. Later, on October 29, 1925, upon a stipulation between the city and appellant, Judge Torrison granted leave to the city to file its amended and supplemental cross-bill instanter, with like effect as though it had been filed on October 7, 1915, and amended on June 5, 1918. The amended and supplemental cross-bill was filed. Upon appropriate allegations it prayed that on the final hearing of the cause the rates and charges fixed by the ordinance of July 17, 1911, be adjudged to be just and reasonable; that appellant be required to re-pay all charges collected in excess of such rates and be enjoined from further collecting such excess charges; that the cross-defendant make complete discovery showing its actual investments in the acquisition and construction of its properties and in the plant and equipment used in the manufacture and distribution of gas for heat, light and power purposes, and showing its earnings and disbursements, including a statement of the money collected by it each year since August 7, 1911, in excess of the rates prescribed by the ordinance; that the city's agents have access to appellant's books, records, data and prop-

erty in order that the city may defend against appellant's petition and sustain the rates so prescribed, and that appellant be required to pay to some responsible depository the excess charges collected by it, to be held and distributed subject to the court's direction, or, in the alternative, to require appellant to furnish bonds sufficient to secure the re-payment of such excess charges.

By its answer to the amended and supplemental cross-bill appellant averred that its petition filed July 31, 1911, was an attempt to invoke a statutory jurisdiction in the court to determine the rates to be charged for gas in the city of Chicago; that if the petition was not an apt invocation of such a statutory jurisdiction, then it, and the proceedings upon it, were a nullity, but that in no event could the petition lawfully be construed to be a bill in chancery seeking equitable relief and justifying the interposition of the city's cross-bill. Appellant further averred in its answer that the act of May 18, 1905, was never passed by the General Assembly; that the act was unconstitutional; that apart from the act of May 18, 1905, the city had no power to pass an ordinance fixing maximum rates for gas, and, consequently, that the ordinance was void; that even if the act of May 18, 1905, was valid, yet the ordinance was void because the act did not authorize the city council to fix varying rates for different portions of the five-year period, and that the rates prescribed by the ordinance were confiscatory and deprived appellant of its property without due process of law. By its answer appellant denied that local consumers had paid eighty cents per thousand cubic feet for gas upon the express condition that the excess over the rates prescribed by the ordinance would be refunded by appellant, under the court's order, in case those rates should finally be adjudged to be just and reasonable; denied that it was obliged to refund such excess; denied that the city was refused access to appellant's books and records for any purpose stated in the cross-bill, but averred that on

March 24, 1916, the court by its orders granted the city access to appellant's books, records and physical properties, and that pursuant to these orders the city during the years 1916 and 1917 had full and complete access to and inspected appellant's books, records and properties, and that further access to them for any purpose was unnecessary. Appellant averred in its answer that the statutory maximum rate for gas furnished by it to consumers in the city of Chicago from February 4, 1906, to January 1, 1914, was eighty-five cents per thousand cubic feet, with an additional charge of ten cents per thousand cubic feet in the event the consumer failed to pay his bill within ten days after its presentation; that no court had authority or jurisdiction to entertain a proceeding at law or in equity to determine whether a lower rate for gas furnished in the city of Chicago during the whole or any part of the period stated was just and reasonable; that the Public Utilities act became effective on January 1, 1914, and by virtue of its provisions complete and exclusive authority and jurisdiction over the rates thereafter to be charged for gas furnished in the city of Chicago was vested in the State Public Utilities Commission, and that even if the act of May 18, 1905, and the ordinance of July 17, 1911, had been valid enactments prior to January 1, 1914, both were repealed by the Public Utilities act, and the circuit court had no authority or jurisdiction to inquire into or to determine the question of the reasonableness of the rates for gas thereafter to be charged, or to require appellant to refund to any consumer of gas in the city of Chicago any portion of the rates charged and collected after that time.

On November 2, 1925, Wiley W. Mills made a motion for leave to file his intervening petition in case No. 307,743, and leave was granted on the same day. He alleged in his petition, among other things, that by the injunctional order of August 2, 1911, the consumers of gas furnished by appellant were required to pay charges for gas higher than

by city ordinance had been determined to be just and reasonable, and that such excess charges provided for in the injunctional order were exacted from the consumers pending the suit upon the express condition that they should be refunded in the event that the ordinance rates were later held to be just and reasonable; that it was appellant's equitable duty to refund the excess charges if it was unable to sustain the allegations in its bill concerning the unreasonableness of the ordinance rates and that it owed this duty to its consumers of gas while the order remained in effect; that Mills, the petitioner, bought 22,000 cubic feet of gas from appellant during July, 1912, and received a bill therefor at the rate of eighty cents per thousand cubic feet, in accordance with the order of August 2, 1911, amounting to $17.60, which sum, by reason of that order, he paid appellant; that if the court should finally adjudge that the rates prescribed by the ordinance were just and reasonable, the petitioner would be entitled to a refund from appellant of five cents per thousand cubic feet of gas so consumed, amounting to $1.10; that more than thirteen years have elapsed since he paid the gas bill above mentioned, yet the rights of appellant and the gas consumers have never been adjudicated, but appellant has from time to time sought to have this proceeding dismissed without any finding by the court whether the ordinance rates were just and reasonable or unjust and unreasonable; that the city has been unable or unwilling to require appellant to prosecute this cause with due diligence, and that the petitioner for that reason seeks to prosecute his claim against appellant in order that its merits may be promptly determined. The prayer of the intervening petition was that the petitioner be made a party defendant in the cause and a cross-complainant with the city; that he be permitted to adopt the city's pleadings as his own; that appellant be required to make proof that the petitioner is not entitled to the refund of $1.10, or, in default of such proof, that

judgment be rendered against appellant and in favor of the petitioner for that sum. Appellant answered the intervening petition, denying a duty or obligation on its part to make any refund under or by virtue of the order of August 2, 1911, and denying any liability to the petitioner. An order was entered on November 2, 1925, that the intervening petitioner have the advantage and benefit of all proceedings theretofore had or taken in or relating to the cause as fully as though he had been a party thereto from its inception.

The agreement between appellant and Mills to submit the agreed case followed two days later. By that agreement Mills adopted all acts and proceedings theretofore had or taken by the city in or relating to the cause, No. 307,743, in the circuit court of Cook county, and, in so far as material, in all other suits and proceedings relating to the ordinance of July 17, 1911, whether by way of pleadings, motions, opinions, arguments, contentions or positions of the city, with the same effect as if Mills had been a party to the several suits and proceedings from the beginning and had actively participated with the city in their conduct at all times. Appellant by the agreement waived its right, as to Mills, to offer in case No. 307,743 any evidence of the value of its property, a fair return thereon, its operating expenses, or similar evidence to establish that the rates mentioned in the ordinance were unjust and unreasonable, but it was agreed that the waiver should be without prejudice to appellant's right to present, as against the city and all gas consumers other than Mills, in case No. 307,743, evidence to show that the rates mentioned in the ordinance were at all times unjust and unreasonable. Both appellant and Mills reserved the right to complain and to assign error upon the rulings, orders and decrees in case No. 307,743 and to object to the consideration of statements of fact, copies of orders, pleadings, affidavits and other matters relating to suits or proceedings other than

case No. 307,743, on the ground of their incompetency and immateriality.

The act of May 18, 1905, by authority of which the city council of the city of Chicago passed the ordinance of July 17, 1911, was held void in *Sutter* v. *People's Gas Light and Coke Co.* 284 Ill. 634. It is conceded that the city council had no power, apart from the act of May 18, 1905, to fix rates and charges for gas supplied the city and its inhabitants. Appellant therefore contends that the ordinance was not only void for want of authority to pass it, but also because it fixed in advance three different rates for three separate periods instead of one rate for one period, and that the rates which appellant charged from 1911 to 1917 did not exceed the statutory maximum rates, and for that reason are conclusively presumed to be the reasonable rates. To sustain the decree appellee insists that the circuit court exercised equitable jurisdiction and granted the equitable relief sought by appellant in the form of a temporary injunction ordered to issue by Judge Gibbons on August 2, 1911; that the obligations imposed on appellant as conditions upon the granting of equitable relief, namely, the eighty-cent rate and the refunding provision, were appropriate, valid and enforceable, and that appellant having actually invoked equitable jurisdiction and obtained equitable relief, it is now estopped to deny the jurisdiction which it invoked. Other questions are also raised by the parties, but since none of them are controlling or decisive of the instant case it will not be necessary to consider them.

More than fourteen years elapsed between the order of Judge Gibbons entered on August 2, 1911, and the agreement between appellant and appellee to submit the instant case. In that period there was neither a hearing nor a decision upon the merits of the controversy. No proceedings were taken upon appellant's petition from August 2, 1911, until October 7, 1915. Three months after that petition was filed the city brought suit against appellant in the same

327—34

court, charging that the act of May 18, 1905, did not confer upon the circuit court authority to fix rates to be charged for gas; that the court was without right, power, jurisdiction or authority to hear or act upon appellant's petition or to enter any injunctional or restraining order upon it, and that all the proceedings taken in the cause were without prejudice to the rights of the city and the other gas consumers; that appellant claimed that it was required by law to file the petition under the act of May 18, 1905, as an anomalous statutory proceeding, for a review of the rates and charges prescribed by the ordinance, and to determine what they should be, before it could attack the reasonableness of those rates and charges by a bill in chancery in any court of competent jurisdiction; that appellant, in the event of an adverse decision upon its petition, would file such a bill challenging the constitutionality of the act and the validity of the ordinance; that appellant might at any time withdraw or dismiss its petition, and that, as a justification for the city's suit, the gas consumers, including the city, were entitled to an adjudication, by a binding decree, of the question of their right to enforce the ordinance against the appellant. The pendency of appellant's petition was interposed as a defense to the city's suit, but it was held that the latter was not abated thereby. By its bill in the Federal court filed on November 11, 1911, and its answer to the city's suit filed December 14, 1911, appellant asserted the unconstitutionality of the act and the consequent invalidity of the ordinance. Nearly three years after the passage of the ordinance the corporation counsel, in his report to the committee on gas, oil and electric light, said that by reason of the substantial increase in the cost of manufacturing gas, with other facts which had developed since the passage of the ordinance, further consideration of the rates prescribed by it might be advisable. He added that, in view of the passage of the Public Utilities act, the city's power to fix gas rates was doubtful, and he advised

against the prosecution of the city's suit at the time.   More than a year later, in July, 1915, special counsel for the city, in his report to the committee on gas litigation, recognized that the constitutionality of the act and the validity of the ordinance were preliminary questions, which should be determined before the issue of the reasonableness of the rates prescribed by the ordinance could wisely be considered.   Not until October 7, 1915, more than four years after the ordinance was passed and appellant's petition was filed in the circuit court, did the city answer the petition and file a cross-bill in the cause.   Upon its motion the proceedings were transferred from the law to the chancery side of the court.   Appellant having objected unsuccessfully to the transformation of its petition, sought to amend the petition to make it conform to a bill in chancery, and to charge, among other things, as the city in its bill filed October 31, 1911, alleged appellant would, and as the latter did in the Federal court on November 11, 1911, that the act of May 18, 1905, had never been passed and was unconstitutional and that the ordinance was therefore invalid.   Leave to make the amendments was denied.   In view of these facts and circumstances and the varying and inconsistent positions taken by the city from time to time, the first question to be determined is whether appellant was estopped from alleging and proving the unconstitutionality of the enabling act and the invalidity of the ordinance.

The plaintiff in *Sutter* v. *People's Gas Light and Coke Co. supra,* brought suit in the municipal court of Chicago against appellant and in his statement of claim alleged that the city council of the city of Chicago had passed the ordinance in question;  that he was a consumer of gas supplied by the defendant during the five-year period the ordinance was effective;  that during that period the defendant demanded eighty cents per one thousand cubic feet of gas consumed by the plaintiff and refused to supply gas to him at the rates prescribed by the ordinance;  that he was

compelled to pay, and did pay, throughout the period stated, the rate demanded, and that the defendant thereby became and was liable to refund to him the overcharges, amounting to $11.53. The defendant by its affidavit of merits admitted the passage of the ordinance and the payment to it of the sums stated, but it denied the validity of the ordinance. It alleged that the city council had passed the ordinance pursuant to power assumed to have been granted by the act approved May 18, 1905, entitled, "An act to confer upon the city of Chicago the power and authority to sell surplus electricity and to fix the rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city of Chicago and the inhabitants thereof;" that the act was unconstitutional and void for reasons set forth, and that it did not go into effect because it never had been lawfully submitted to or adopted by the electors of the city of Chicago. The plaintiff filed an affidavit in reply, which set forth that the defendant was estopped to set up its defense because it had filed a petition in the circuit court of Cook county alleging that the rates and charges fixed by the ordinance were unjust and unreasonable and obtained an order restraining the city from enforcing or attempting to enforce the ordinance, and providing that until final action by the court the defendant should charge, collect and receive eighty cents per one thousand cubic feet for gas consumed, with the additional sum of ten cents for a failure to pay within ten days, and that each consumer of gas paying in excess of the rates fixed by the ordinance, until the final order of the court, should receive a refund of such excess if the rates fixed were finally adjudged to be just and reasonable, and that the defendant assented to the entry of the order. The defendant filed an affidavit in rejoinder, setting forth that the facts stated in the reply were incompetent and immaterial; denying that the provision of the order for a refund was assented to by it, or

that it had either waived its right to assert the invalidity of the act or was estopped to assert that defense, and averring that for five years prior to August 2, 1911, the defendant had sold gas at eighty-five cents per thousand cubic feet, and that by the order of the court fixing the price at eighty cents the defendant had suffered a great loss. The municipal court rendered judgment for the plaintiff for $11.53 and costs of suit. The defendant prosecuted an appeal to this court, and it was held that the facts stated in the plaintiff's reply did not estop the defendant from attacking the validity of the act under which the ordinance was passed, and the act was declared void because it embraced two subjects, both of which were expressed in its title, in contravention of section 13 of article 4 of the constitution. The judgment was reversed without remanding the cause. In delivering the court's opinion Mr. Justice Cartwright said: "The counsel for appellee have joined with the *amicus curiæ* in insisting that the defendant waived its right to assert the unconstitutionality of the statute and is estopped to assert the same. Anyone may waive his own personal, individual right to question the constitutionality of a statute or may be estopped to assert such right. (*McCarthy* v. *Lavasche,* 89 Ill. 270; *People* v. *Vaughan,* 282 id. 163; *Pierce* v. *Somerset Railway Co.* 171 U. S. 641; *Ferguson* v. *Landran,* 68 Ky. 230; 10 R. C. L. 836.) If there is an attempt to enforce a liability based on an unconstitutional act and the defendant fails to set up by way of defense the invalidity of the act his failure and neglect will ordinarily constitute a waiver of his personal right, and a party will be estopped to assert the invalidity of an act which he has treated as valid by receiving and accepting its benefits. But neither of those conditions exists here. The act in question provided that if the city should fix unjust and unreasonable rates and charges the same might be reviewed and determined by the circuit court of the county in which the city was situated. The defendant was charging a rate of

eighty-five cents per thousand cubic feet for gas and applied to the circuit court by petition alleging that the rates prescribed by the ordinance were unjust and unreasonable and praying the court to review the same. No one was made a defendant but the city of Chicago entered its appearance, and during the seven years that the case has been pending it has had a checkered history either as a petition to fix rates or a bill in equity, but it has never reached a conclusion. Under the petition an order was made reducing the rates for gas from eighty-five cents to eighty cents, and no advantage accrued to the defendant under the act or the ordinance from which it can be said that the defendant received and accepted any benefit from the act. The petition alleged that the rates fixed were unjust, unreasonable and confiscatory, and an attack upon the ordinance upon that ground could not be treated as an admission that it is valid and free from any other objection. All that can be claimed as an estoppel is that the ordinance was attacked on a different ground in the circuit court than the ground upon which the defense was based in this suit, and that contains no element of an estoppel *in pais.* Such an estoppel is based upon the prevention of a fraudulent result if one were permitted to dispute the existence of a state of facts which he has induced another to believe in and act upon. Before it can be invoked to the aid of the litigant it must appear that the person against whom it is invoked has by his words or conduct caused the litigant to believe in the existence of a certain state of things and induced him to act upon that belief. In *Holcomb* v. *Boynton,* 151 Ill. 294, it was said: 'It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because under a misapprehension of the law he has treated as legal and valid an act void and open to the inspection of all.' And in *Washingtonian Home* v. *City of Chicago,* 157 Ill. 414, the court said: 'An estoppel by matter *in pais* may be

defined as an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced by the voluntary, intelligent action of the party against whom it is alleged to change his position.' The facts of this case do not come within the rule."

Appellant filed its petition to invoke a statutory jurisdiction to review and determine the rates to be charged for gas in the city of Chicago. Ignoring the petition, the city instituted its suit against appellant in relation to the same subject matter. For more than four years after the petition was filed the city treated it as a nullity. The city knew that appellant would question the validity of the act and assert the want of authority to pass the ordinance practically from the time the petition was filed. At no time during the five-year period prescribed by the ordinance did the city change its position through reliance upon the petition and the order of August 2, 1911. *Sutter* v. *People's Gas Light and Coke Co. supra,* is decisive of the question of estoppel. Appellant should have been permitted to allege and prove the unconstitutionality of the enabling act and the want of power to pass the ordinance, and the circuit court erred in denying leave to amend appellant's petition in those respects.

An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is in legal contemplation as inoperative as though it had never been passed. (*Norton* v. *Shelby County,* 118 U. S. 425.) When a statute is adjudged to be unconstitutional, rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. (1 Cooley's Const. Lim.—8th ed.—p. 382; *Board of Highway Comrs.* v. *City of Bloomington,* 253 Ill. 164.) The act of May 18,

1905, was adjudged to be unconstitutional, and for that reason it conferred no power or authority on the circuit court to fix rates to be charged for gas. Apart from the act, the circuit court had no power to prescribe such rates. . The function of rate-making is purely legislative in its character; and this is true whether it is exercised directly by the legislature itself or by some subordinate or administrative body to which the power of fixing rates in detail has been delegated. The completed act derives its authority from the legislature and must be regarded as an exercise of the legislative power. (*Stone* v. *Farmers' Loan and Trust Co.* 116 U. S. 307; *Reagan* v. *Farmers' Loan and Trust Co.* 154 id. 362; *Interstate Commerce Com.* v. *C., N. O. & T. P. Ry. Co.* 167 id. 479; *McChord* v. *Louisville and Nashville Railroad Co.* 183 id. 483; *Atlantic Coast Line Railroad Co.* v. *North Carolina Corporation Com.* 206 id. 1; *Prentis* v. *Atlantic Coast Line Co.* 211 id. 210; *Honolulu Rapid Transit and Land Co.* v. *Hawaii,* 211 id. 282; *Knoxville* v. *Knoxville Water Co.* 212 id. 1; *Grand Trunk Western Railway Co.* v. *Railroad Com. of Indiana,* 221 id. 400.) In *Prentis* v. *Atlantic Coast Line Railroad Co. supra,* at page 226, Mr. Justice Holmes said: "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial in kind." The power to prescribe rules of conduct, such as fixing a scale of rates operative upon the public, is legislative and not judicial in its nature, and so far as it is legislative cannot be conferred upon the courts; but the courts can be empowered to ascertain and deal with the reasonableness of rates whenever this is necessary to determine the rights and

interests of parties actually before the court. (3 Dillon on Mun. Corp.—5th ed.—sec. 1329; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 Ill. 49; *Public Utilities Com.* v. *Springfield Gas and Electric Co.* 291 id. 209; *Louisville and Nashville Railroad Co.* v. *Garrett*, 231 U. S. 298; *Knoxville* v. *Knoxville Water Co. supra; Interstate Commerce Com.* v. *C., N. O. & T. P. Ry. Co. supra.*) It is one thing to inquire whether the rates which have been charged and collected are reasonable, but it is an entirely different thing to prescribe rates which shall be charged in the future. The former is a judicial, while the latter is a legislative act. *Interstate Commerce Com.* v. *C., N. O. & T. P. Ry. Co. supra; Chicago, Milwaukee and St. Paul Railway Co.* v. *Minnesota*, 134 U. S. 418; *St. Louis and Santa Fe Railway Co.* v. *Gill*, 156 id. 649; *C., N. O. & T. P. Ry. Co.* v. *Interstate Commerce Com.* 162 id. 184.

The order entered upon appellant's petition on August 2, 1911, was without legal basis or justification. The refunding provision of that order sought to hold in abeyance, for ultimate distribution, a sum of money to be ascertained in the future, without any guide or standard by which to arrive at a decision. The circuit court did not have, and no court has, the power to fix a maximum rate for the period of time defined by the ordinance, now long since elapsed, and no equitable principle is involved which requires the litigation to be prolonged. Wanting that power, it cannot be judicially determined that the appellant has charged and collected a sum of money in excess of a valid maximum rate to which the gas consumer will be entitled. Hence neither property nor a property right of the city or of the appellee arises out of the subject matter to protect which an estoppel should operate or concerning which upon other grounds a decree should be rendered against the appellant. Cooley, in his work on Constitutional Limitations, (vol. 2, 8th ed. p. 846,) well says: "Where a court by law

has no jurisdiction of the subject matter of a controversy, a party whose rights are sought to be affected by it is at liberty to repudiate its proceedings and refuse to be bound by them notwithstanding he may once have consented to its action, either by voluntarily commencing the proceedings as plaintiff, or as defendant by appearing and pleading to the merits, or by any other formal or informal action. This right he may avail himself of at any stage of the case, and the maxim that requires one to move promptly who would take advantage of an irregularity does not apply here, since this is not mere irregular action but a total want of power to act at all."

The decree of the circuit court is reversed.

*Decree reversed.*