Docket No. 98909.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

DEENA PERLSTEIN *et al.*, Appellees, v. MAURICE WOLK *et al.*,
Appellants.

*Opinion filed February 17, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Justices Freeman, McMorrow, Garman, and Karmeier concurred
in the judgment and opinion.

Justice Kilbride, joined by Chief Justice Thomas, dissenting.

## OPINION

Plaintiffs Deena Perlstein and Scott Schneider filed a legal
malpractice action against defendants Maurice Wolk and Ross &
Hardies. Plaintiffs relied on the limitations period for malpractice
actions set forth in section 13–214.3 of the Code of Civil Procedure,
as amended by Public Act 89–7 (commonly referred to as the Tort
Reform Act). See Pub. Act 89–7, eff. March 9, 1995 (amending, *inter
alia*, 735 ILCS 5/13–214.3 (West 1994)). Defendants moved to
dismiss the complaint, arguing that this court's decision in *Best v.
Taylor Machine Works*, 179 Ill. 2d 367 (1997), which held Public Act
89–7 void in its entirety, rendered plaintiffs' complaint untimely. The
trial court, relying on the void *ab initio* doctrine, agreed with
defendants and dismissed the complaint with prejudice. The appellate

court reversed. 349 Ill. App. 3d 161. We allowed defendants' petition for leave to appeal (177 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

## BACKGROUND

### I. Limitations and Repose Periods for Attorney Malpractice

Prior to the adoption of Public Act 89–7, section 13–214.3 of the Code of Civil Procedure established a two-year limitations period and a six-year repose period for attorney malpractice actions. 735 ILCS 5/13–214.3(b), (c) (West 1994). Subsection (d) of the statute contained an exception to the repose period:

> "When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." 735 ILCS 5/13–214.3(d) (West 1994).

Public Act 89–7, effective March 9, 1995, removed subsection (d), but otherwise left intact the balance of section 13–214.3. With the removal of subsection (d), the statute then required–without exception–that all legal malpractice actions be brought within two years from the date the complaining party knew or reasonably should have known of the injury, but in any event, not more than six years after the act or omission occurred. 735 ILCS 5/13–214.3(b), (c) (West 1996).

On December 18, 1997, this court entered its decision in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). In *Best*, we held certain "core provisions" of Public Act 89–7 violated the separation of powers clause and the prohibition against special legislation. *Best*, 179 Ill. 2d at 416, 433, 449, 467. Because the core provisions were inseparable from the remainder of Public Act 89–7, we concluded that the act must fail *in toto*. We thus declared Public Act 89–7 "void in its entirety." *Best*, 179 Ill. 2d at 467. That portion of Public Act 89–7 which removed the exception to the statute of repose for

attorney malpractice actions set forth in section 13–214.3(d) was not one of the core provisions held substantively unconstitutional. Nonetheless, because we held Public Act 89–7 void in its entirety, that portion of the act was also rendered invalid.

Against this statutory backdrop, we consider the nature and timing of the malpractice action at issue here.


## II. The Malpractice Action

Plaintiffs' cause of action for legal malpractice stems from defendants' preparation, on October 23, 1992, of the last will and testament of Lawrence A. Perlstein, Deena Perlstein's husband. Generally, plaintiffs alleged that defendants negligently prepared the will, thereby preventing the Lawrence A. Perlstein Trust from disbursing $300,000 to Scott Schneider, Deena Perlstein's son, and causing other damages.

Lawrence Perlstein died on September 23, 1995. On October 16, 1995, the circuit court of Lake County admitted the will to probate and issued letters of office to Deena Perlstein. On January 8, 1996, the attorneys for the trustees of the Lawrence A. Perlstein Trust rendered an opinion that the trustees should not fund the trust on the ground that Lawrence Perlstein had not properly exercised the power of appointment in his will. On January 26, 1996, the trustees notified Deena Perlstein that the trust would not be funded.

At the time Deena Perlstein learned that her late husband's trust would not be funded, the changes wrought by Public Act 89–7 had been on the statute books for almost a year. As noted above, following the passage of Public Act 89–7, a two-year limitations period and a six-year repose period applied–without exception–to all attorney malpractice actions. See 735 ILCS 5/13–214.3(b), (c) (West 1996). According to defendants, the two-year limitations period would have expired, at the latest, on January 26, 1998 (two years from the date Deena Perlstein purportedly had knowledge that the trust would not be funded), and the six-year repose period would have expired October 23, 1998 (six years after the date defendants prepared the will). Plaintiffs filed their legal malpractice action in the circuit court of Cook County on January 8, 1998, clearly within the

limitations and repose periods.[1]

Defendants moved to dismiss the complaint with prejudice, arguing that it was time-barred. See 735 ILCS 5/2‒619(a)(5) (West 2002). According to defendants, because *Best* declared Public Act 89‒7 unconstitutional, the act was void *ab initio*. In effect, Public Act 89‒7 "never was." Thus, defendants argued that the exception to the statute of repose set forth in section 13‒214.3(d), which Public Act 89‒7 sought to remove, "never ceased to have validity." Under subsection (d), plaintiffs cause of action should have been commenced "within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later." 735 ILCS 5/13‒214.3(d) (West 1994). In this case, the later date was the claims-filing date: April 26, 1996. See 755 ILCS 5/18‒3 (West 1996). In defendants' view, plaintiffs' complaint, filed January 8, 1998, was 20 months late.

Plaintiffs countered that the void *ab initio* doctrine does not govern this case. Plaintiffs relied on Illinois case law holding that where a legislative change in a statute of repose would otherwise instantaneously bar a plaintiff's cause of action, the plaintiff will be allowed a reasonable period of time in which to file its cause of action. See, *e.g.*, *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223 (1983); *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684 (1995). Plaintiffs posited that the result should be no different where the change in the statute of repose results from a judicial decision, rather than legislative action. Thus, plaintiffs argued that their complaint, filed just three weeks following this court's decision in

---

[1]Plaintiffs voluntarily dismissed the Cook County suit on September 5, 2001, and refiled it in the circuit court of Lake County on April 10, 2002. Defendants admit that the refiled action relates back to the earlier filed action. Thus, for purposes of determining the timeliness of plaintiffs' complaint, the parties agree that the relevant filing date is January 8, 1998.

*Best*, was filed within a reasonable period of time following the change in the law.

The circuit court acknowledged that the result might be harsh, but nonetheless applied the void *ab initio* doctrine and dismissed plaintiffs' complaint with prejudice. The appellate court reversed, holding that such a result would be fundamentally unfair. The appellate court found that the filing of plaintiffs' complaint, just three weeks after the *Best* decision, was within a reasonable period of time after the change in the repose period for malpractice actions and that the complaint was not time-barred. 349 Ill. App. 3d at 169-70. The appellate court remanded the cause for additional proceedings. 349 Ill. App. 3d at 171. This appeal followed.

## ANALYSIS

The classic formulation of the void *ab initio* doctrine, and the one followed in Illinois, is found in the early case of *Norton v. Shelby County*, 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121 (1886). There, the Court considered whether an unconstitutional state statute that created a county board could give validity to the acts of the board. The Court answered in the negative, stating in relevant part:

> "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton*, 118 U.S. at 442, 30 L. Ed. at 186, 6 S. Ct. at 1125.

See *People v. Gersch*, 135 Ill. 2d 384, 399 (1990) ("An unconstitutional law 'confers no right, imposes no duty and affords no protection. It is *** as though no such law had ever been passed," quoting *People v. Schraeberg*, 347 Ill. 392, 394 (1932), in turn citing *Board of Highway Commissioners v. City of Bloomington*, 253 Ill. 164, 176 (1911), in turn citing *Norton*, 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121). Thus, under the *Norton* rule, an unconstitutional statute is void *ab initio*, *i.e.*, void "from the beginning." See Black's Law Dictionary 1604 (8th ed. 2004).

Defendants argue that our case law mandates strict application of the void *ab initio* doctrine in both civil and criminal cases, irrespective of the consequences, and that the appellate court erred in failing to apply the doctrine in this civil case. Plaintiffs argue that the

˘5˘

better approach takes into account the equities of a case, and that under the equities here, their complaint should be allowed to proceed. We consider these arguments in turn.

## I. Strict Application of the Void *Ab Initio* Doctrine

In support of their argument for strict application of the void *ab initio* doctrine, defendants rely principally on the *Gersch* opinion. In *Gersch*, we considered whether our earlier decision in *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209 (1988), should apply retroactively to Gersch's case. In *Joyce*, we held that section 115–1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115–1), which granted the State a right to demand a jury in certain criminal trials, was unconstitutional. Gersch argued in his direct appeal that the State's jury demand in his case violated his constitutional right to a bench trial. In holding that *Joyce* would apply retroactively to Gersch's case, we stated:

> "A constitutionally repugnant enactment suddenly cuts off rights that are guaranteed to every citizen (Ill. Const. 1970, art. I, §1 ('All men *** have certain inherent and inalienable rights')), and instantaneously perverts the duties owed to those citizens. To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This would clearly offend all sense of due process under both the Federal and State Constitutions. [Citations.] Along with these considerations, we note that this court has expressly held that a defendant cannot be prosecuted under an unconstitutional act." *Gersch*, 135 Ill. 2d at 397-98.

We concluded that "where a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Gersch*, 135 Ill. 2d at 399. To correct the wrong wrought in Gersch's case, we reversed his conviction and remanded the cause for a new trial. *Gersch*, 135 Ill. 2d at 401-02.

Unlike the statute at issue in *Gersch*, the portion of Public Act 89–7 that removed section 13–214.3(d) from the attorney malpractice

statute of limitations did not "suddenly cut off rights guaranteed to every citizen" or even to these particular defendants. Attorneys in this state possess no constitutional guarantee of a particular limitations or repose period for malpractice actions. Thus, the change made in the repose period by Public Act 89–7 did not perpetrate a "wrong" against defendants requiring correction. Indeed, the amendment to the repose period was rendered invalid simply because it could not be severed from the balance of Public Act 89–7, and not because it contravened any constitutional principle. In other words, the invalidity of the amendment to section 13–214.3 was simply "collateral damage" from the force of this court's declaration in *Best* that the core provisions of Public Act 89–7 were substantively unconstitutional. Under these circumstances, and in contrast to the *Gersch* case, failing to adhere strictly to void *ab initio* principles would not deprive defendants of a remedy for the deprivation of a constitutional right because no such right is implicated.

Notwithstanding these important factual distinctions between *Gersch* and the present case, defendants argue that the void *ab initio* doctrine must be strictly applied in this civil case just as it was in *Gersch*. Defendants note that *Gersch*, itself, contains citation to civil cases from this court applying the doctrine. *E.g.*, *Gersch*, 135 Ill. 2d at 390, citing *Van Driel Drug Store, Inc. v. Mahin*, 47 Ill. 2d 378 (1970). The civil cases cited in the *Gersch* opinion establish, at most, that the void *ab initio* doctrine *can* be applied to a civil case; they do not establish that the doctrine *should* be applied to civil cases generally, or to this civil case in particular. Moreover, the *Gersch* opinion left open the issue of whether application of the void *ab initio* doctrine is always appropriate in cases outside the area of criminal prosecutions:

> "We must note, however, that courts have been struggling with the potentially harsh results of the *ab initio* doctrine, particularly where law enforcement officials have relied in good faith on the validity of a statute [citations], or where the invalidation of rules of criminal procedure would allow otherwise guilty criminals to win their freedom [citation]. Attempting to avoid these problems, courts have attempted to temper the *ab initio* doctrine's harsh results \*\*\* to minimize unfairness. [Citation.] However, scholars have noted that in the area of *criminal prosecution*, the *ab initio* principle is

especially appropriate." (Emphasis added.) *Gersch*, 135 Ill. 2d at 399-400.

We are, therefore, reluctant to extend the reach of *Gersch* beyond cases involving criminal prosecutions.

Defendants also cite our more recent decisions in *Petersen v. Wallach*, 198 Ill. 2d 439 (2002), and *Jorgensen v. Blagojevich*, 211 Ill. 2d 286 (2004). Defendants argue that *Petersen* and *Jorgensen* establish that the void *ab initio* doctrine must be applied in this case despite the possibility of harsh results. We disagree.

As defendants note, *Petersen* and the present case involve the same statute. At issue in *Petersen*, however, was the proper construction of section 13−214.3(d). *Petersen* states: "The sole issue presented by this appeal is whether the exception to the six-year statute of repose for attorney malpractice actions *** applies only in cases where the assets of the deceased pass by way of the Probate Act ***." *Petersen*, 198 Ill. 2d at 441. In the course of deciding *that* issue, we quoted with favor the following passage from an earlier case:

> " ' "Where the words employed in a legislative enactment are free from ambiguity or doubt, they must be given effect by the courts even though the consequences may be harsh, unjust, absurd or unwise. [Citations.] Such consequences can be avoided only by a change of the law, not by judicial construction." ' " *Petersen*, 198 Ill. 2d at 447, quoting *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 557 (1999), quoting *People ex rel. Pauling v. Misevic*, 32 Ill. 2d 11, 15 (1964).

Whether, under our rules of statutory construction, an absurd or unjust result should impact our reading and application of a clearly worded statute is unrelated to the issue of whether the void *ab initio* doctrine should be applied in a given case.

Defendants are correct that, in a footnote, the *Petersen* opinion implicitly applies the void *ab initio* doctrine. *Petersen*, 198 Ill. 2d at 443 n.1. We note, however, that neither the plaintiff nor the defendant attorney argued that the void *ab initio* doctrine should not apply in that case. Consequently, we were not asked to consider whether it is ever appropriate to temper the doctrine's harsh results. Any harsh results in *Petersen* resulted from our construction of the statute, not from application of the void *ab initio* doctrine. Defendants' reliance

on *Petersen* is misplaced.

The *Jorgensen* case is also distinguishable from the present dispute. At issue in *Jorgensen* was "whether the General Assembly and the Governor violated the Illinois Constitution when they attempted to eliminate the cost-of-living adjustments [COLAs] to judicial salaries provided by law for the 2003 and 2004 fiscal years." *Jorgensen*, 211 Ill. 2d at 287. We answered that question in the affirmative and refused to "suspend" constitutional requirements for economic reasons, namely, the impact on the state's budget. *Jorgensen*, 211 Ill. 2d at 316. In the course of our decision, we held Public Act 92–607, which suspended the 2003 COLA, constitutionally infirm and void *ab initio*. *Jorgensen*, 211 Ill. 2d at 309. Here, plaintiffs do not request that we "suspend" constitutional requirements by enforcing an unconstitutional statute. Rather, plaintiffs ask that we consider the equities of this case and allow their complaint to proceed. *Jorgensen* does not aid in our resolution of this issue.

We acknowledge that defendants' position–advocating strict application of the void *ab initio* doctrine–has a certain surface appeal, creating as it would a bright-line rule which could be applied with relative ease. Defendants' position, however, unduly discounts the real life consequences flowing from a statutory enactment. When the General Assembly enacts legislation such as Public Act 89–7, that legislation is presumptively valid. See, *e.g.*, *In re Marriage of Bates*, 212 Ill. 2d 489, 509 (2004) ("Statutes are presumed constitutional"); *Beaubien v. Ryan*, 198 Ill. 2d 294, 298 (2001) (statutory enactments are "cloaked with the presumption of validity"). Individuals, including plaintiffs here, "are entitled to rely on State statutes when 'making decisions and in shaping their conduct.' " *Board of Commissioners of the Wood Dale Public Library District v. County of Du Page*, 103 Ill. 2d 422, 429 (1984), quoting *Lemon v. Kurtzman*, 411 U.S. 192, 199, 36 L. Ed. 2d 151, 160, 93 S. Ct. 1463, 1468 (1973). See also *Adukia v. Finney*, 315 Ill. App. 3d 766, 770 (2000) (recognizing, in a post-*Best* case, that "a party should not be penalized for his good-faith reliance on existing law"). Individuals are not required or empowered to determine whether the law is constitutional; that duty belongs to the judiciary. *Gersch*, 135 Ill. 2d at 398-99. Strict application of the void *ab initio* doctrine fails to take into account these realities, creating a "Catch-22." Individuals are

entitled to rely on a legislative enactment, presuming it is valid, but must suffer the consequences of doing so should this court later hold that law unconstitutional.

Although defendants note that courts in other jurisdictions strictly apply the void *ab initio* doctrine (*e.g.*, *Spanish Cove Sanitation, Inc. v. Louisville-Jefferson County Metropolitan Sewer District*, 72 S.W.3d 918, 921 (Ky. 2002); *McGuire v. C&L Restaurant Inc.*, 346 N.W.2d 605, 614 (Minn. 1984)), our research reveals that courts do not do so universally. As discussed below, courts in other jurisdictions frequently consider the equities of a case and will take steps to ameliorate the harsh results from the doctrine's strict application. Whether Illinois should adopt a similar approach is the issue we now consider.

## II. An Equitable Approach

As noted above, Illinois' void *ab initio* doctrine has its roots in the early case of *Norton v. Shelby County*, 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121 (1886). Under the *Norton* rule, the invalid statute is "eliminated entirely from the consideration of a case." O. Field, The Effect of an Unconstitutional Statute 3 (1935). No weight is given to the fact that the statute was enacted by the legislature, approved by the Governor, and relied upon by the people prior to it being declared invalid by a court. O. Field, The Effect of an Unconstitutional Statute 3 (1935). Under this approach, some courts have gone so far as to rule that "an unconstitutional statute could not protect an officer who executed it or a person who acted in reliance upon it for personal liability for the consequences of their actions." 1 N. Singer, Sutherland on Statutory Construction §2:7, at 47 (6th ed. 2002).

The failure of the *Norton* rule to consider the reliance interests of individuals was described early on by the New Jersey Supreme Court as follows:

> "The vice of the doctrine of Norton v. Shelby County *** is that it fails to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity. The latter is no more the function of the citizen than is the making of the law. *** To require the citizen to determine for himself, at his peril, to what extent, if at all, the legislature has overstepped the boundaries defined

by the constitution *** would be to place upon him an intolerable burden." *Lang v. Mayor & Chief of Police*, 74 N.J.L. 455, 459 (1907).

The United States Supreme Court has also recognized that inequities can result from strict application of the *Norton* rule. See *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 84 L. Ed. 329, 60 S. Ct. 317 (1940); *Lemon v. Kurtzman*, 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973). In *Chicot County*, Chief Justice Hughes, writing for a unanimous Court, noted that "broad statements," such as those in *Norton*, "as to the effect of a determination of unconstitutionality must be taken with qualifications." *Chicot County*, 308 U.S. at 374, 84 L. Ed. at 332, 60 S. Ct. at 318. The Court explained that "[t]he actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." *Chicot County*, 308 U.S. at 374, 84 L. Ed. at 333, 60 S. Ct. at 318.

The Court again took up the shortcomings of the *Norton* rule in the *Lemon* case. There, Chief Justice Burger (in a plurality opinion) acknowledged the difficulty in attempting to reconcile "the constitutional interests reflected in a new rule of law with reliance interests founded upon the old." *Lemon*, 411 U.S. at 198, 36 L. Ed. 2d at 160, 93 S. Ct. at 1468. Chief Justice Burger recognized that although the logic of *Norton* may have been appealing "in the abstract," "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." *Lemon*, 411 U.S. at 199, 36 L. Ed. 2d at 160, 93 S. Ct. at 1468.

Numerous courts are in agreement that *Norton* represents the old rule as to the effect of an unconstitutional statute. See, *e.g.*, *Ryan v. County of Du Page*, 45 F.3d 1090, 1094 (7th Cir. 1995) (acknowledging that the "old doctrine," under *Norton*, pursuant to which unconstitutional statutes are void *ab initio* "has been abandoned"); *Trucke v. Erlemeier*, 657 F. Supp. 1382, 1391 (N.D. Iowa 1987) (observing that the United States Supreme Court abandoned the *Norton* rationale and suggesting that "if *Norton* and its progeny were decided today, the outcome would be different"); *United States v. DePoli*, 628 F.2d 779, 782 (2d Cir. 1980)

(recognizing that the *Norton* view, under which an unconstitutional law is treated as having had no effects whatsoever from the date of its enactment, has been replaced by a more "realistic approach"); *W.R. Grace & Co. v. Department of Revenue*, 137 Wash. 2d 580, 594 & n.10, 973 P.2d 1011, 1017 & n.10 (1999) (rejecting parties' reliance on the now-abandoned void *ab initio* doctrine and referring to *Norton* as "antiquated Supreme Court authority"); *American Manufacturers Mutual Insurance Co. v. Ingram*, 301 N.C. 138, 147-50, 271 S.E.2d 46, 51-52 (1980) (stating that, "[d]epending on the circumstances, courts have employed other rules which avoid the hard and fast consequences of the rule enunciated in *Norton*," and that North Carolina has retreated from that rule); *Wagshal v. Selig*, 403 A.2d 338, 341-42 (D.C. App. 1979) (discussing the decline of the "once-popular 'void *ab initio*' rule" and following the "recent trend in adopting a test of reasonableness and good faith in determining the effect which the judicial invalidation of a statute or regulation should have on the rights and obligations of the parties who have taken action pursuant to an invalid provision"); *Perkins v. Eskridge*, 278 Md. 619, 627-37, 366 A.2d 21, 27-32 (1976) (discussing the development of the void *ab initio* rule and other approaches used when determining the status of a statute declared unconstitutional, and joining those jurisdictions which have refused to apply the void *ab initio* rule in all situations), overruled on other grounds by *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984).

Further, at least one legal scholar has recognized that, in light of the injustice and inconvenience which may follow when the void *ab initio* doctrine is strictly applied, the "modern trend" is away from void *ab initio* toward a more equitable and realistic approach that is tempered by considerations of reasonableness and good-faith reliance on the purportedly valid statute. 1 N. Singer, Sutherland on Statutory Construction §2:7, at 47-49 (6th ed. 2002). See also E. Plave, Note, *The Phenomenon of Antique Laws: Can a State Revive Old Abortion Laws in a New Era?*, 58 Geo. Wash. L. Rev. 111 (1989) (discussing the development and decline of the void *ab initio* doctrine and alternative approaches); O. Field, The Effect of an Unconstitutional Statute 91 (1935) (suggesting that *Norton*'s dogmatic statement is not true, *i.e.*, "Courts have held that unconstitutional statutes have imposed duties, have granted rights, have created offices, and have some operative effect").

The circumstances under which state courts have found it appropriate to reject the void *ab initio* doctrine, in favor of a more realistic and equitable approach, are varied. For example, in *Downs v. Jacobs*, 272 A.2d 706 (Del. 1970), the Delaware Supreme Court declined to apply the *Norton* rationale in a landlord and tenant dispute involving a distraint for unpaid rent:

> "The Delaware Landlord Distress Law has never been adjudged unconstitutional. Therefore, it is clothed by a presumption of constitutionality. [Citations.] The [defendants] in the instant case were entitled to rely upon that presumption of constitutionality and validity, and to act reasonably and in good faith under the provisions of the Law as it then existed. Citizens and public officials have a right to accept the law as it is written until it is repealed or judicially condemned. They are not required to speculate upon the validity of a statute or to act under it at their peril. Until legislatively or judicially excised, a statute is an operative fact. Courts presume every legislative act constitutional and indulge every intendment in favor of validity. No penalty may be visited upon citizens for doing likewise." *Downs*, 272 A.2d at 707.

More recently, in *Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc.*, 36 Conn. App. 123, 648 A.2d 882 (1994), a Connecticut appeals court declared a statute unconstitutional on due process grounds and then considered the effect of its ruling on the plaintiff's claim for damages. The plaintiff held a lien on a motor vehicle which the defendant repair facility had sold, pursuant to the invalid statute, without notifying the plaintiff. The Connecticut court declined to award damages. The court observed that, in response to the Supreme Court's statements in *Chicot County* and *Lemon*,

> "a number of jurisdictions have adopted tests of reasonableness and good faith to determine the consequences of conduct undertaken pursuant to a statute subsequently deemed invalid. [Citations.] Those jurisdictions have concluded that, generally, it would be an injustice to penalize a person for actions taken under a statute that was valid at the time of the conduct. We join those jurisdictions, and recognize that citizens have the right to accept statutory law as written until it is repealed or invalidated; citizens are not

˘13˘

required to speculate on the constitutionality of a statute before acting under it. We, therefore, hold that citizens will not face personal liability for acting reasonably and in good faith reliance on the provisions of a statute that is later declared unconstitutional." *Dutch Point*, 36 Conn. App. at 134-35, 648 A.2d at 888.

Of particular relevance here is a Missouri case, *State ex rel. Cardinal Glennon Memorial Hospital for Children v. Gaertner*, 583 S.W.2d 107, 118 (Mo. 1979). There, the Missouri Supreme Court held that medical malpractice claims, timely submitted under a statute later held unconstitutional, were not time-barred under the void *ab initio* doctrine. The statute at issue required that all medical malpractice claims be submitted first to a review board which would make a nonbinding recommendation on liability and damages. Submission of the claim to the board, with appropriate notice to the defendants, tolled the running of the limitations period for malpractice claims during the time required for the board to consider the matter. The Missouri Supreme Court held the statute invalid in that it imposed a procedure as a precondition to access to the courts, in violation of the Missouri constitution. *Cardinal Glennon*, 583 S.W.2d at 110.

A month after *Cardinal Glennon* was decided, the Missouri Supreme Court, in a supplemental opinion, addressed the status of the numerous claims that were pending before the review board. *Cardinal Glennon*, 583 S.W.2d at 118. The court noted that the claimants "undoubtedly relied on the protection afforded them by the tolling provision." *Cardinal Glennon*, 583 S.W.2d at 118. Citing *Norton* and other case law, the court acknowledged that, in the past, an unconstitutional statute conferred no rights from the date the statute was enacted, and not merely from the date of the decision holding it invalid. The court concluded, however, that the "modern view" rejects this rule "to the extent that it causes injustice to persons who have acted in good faith and reasonable reliance upon a statute later held unconstitutional." *Cardinal Glennon*, 583 S.W.2d at 118. The court observed that, if the tolling provisions are viewed as retroactively unconstitutional, those claimants who reasonably and in good faith relied upon the statute to protect their right to submit their claims to the courts would suffer a "manifest injustice." *Cardinal Glennon*, 583 S.W.2d at 118. Accordingly, the court ordered that the

statute of limitations would be tolled for claims submitted to the review board between the effective date of the statute and the effective date of the court's declaration of invalidity–an approximately two-year period. *Cardinal Glennon*, 583 S.W.2d at 118.[2]

Although this court is not bound by trends in the law occurring outside our jurisdiction, this court has considered whether Illinois law is consistent with our sister states and, where appropriate, has adopted the views of other jurisdictions. See, *e.g.*, *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 385-86 (2000) (overruling, in part, a prior decision of this court because "the modern trend" in favor of according estoppel effect to criminal convictions was correct); *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998) (noting that our adoption of the transactional test to determine whether identity of causes of action exists for purposes of *res judicata* is consistent with "the trend of decisions in other jurisdictions"); *Wilson v. Clark*, 84 Ill. 2d 186, 195 (1981) (explaining that "[t]his court's following of Federal Rules 703 and 705 comports with the modern trend liberalizing certain trial procedures"). Upon careful review, we are persuaded by the foregoing authorities that this court should adopt a more moderate approach when determining the effect of a declaration by this court that a statute is unconstitutional.

We do not, however, abandon the *Norton* rule. In cases such as *Gersch*, where a defendant's constitutionally guaranteed rights are in need of vindication, strict application of the void *ab initio* doctrine is appropriate. In other cases, however, where no such rights are at stake, other equitable and practical factors are appropriate for consideration by this court. The issue is not so much a matter of

---

[2]The Missouri Supreme Court later clarified the operation of its decision tolling the limitations period by considering three particular malpractice claims. *State of Missouri ex rel. Knipschild v. Bellamy*, 615 S.W.2d 38 (Mo. 1981).

applying or not applying the void *ab initio* doctrine, as it is determining whether a particular set of circumstances justifies a court's exercise of its equitable powers to ameliorate the doctrine's sometimes harsh results. Consideration of the circumstances in this case leads us to conclude that plaintiffs' complaint should be allowed to proceed.

### III. The Present Dispute

At the time Deena Perlstein learned that her husband's trust would not be funded, Public Act 89–7 had been in effect for almost a year. Under section 13–214.3, as amended by Public Act 89–7, Deena Perlstein and her son were required to file their malpractice action within two years from the date they knew or reasonably should have known of the injury but, in any event, not more than six years after the act or omission occurred. 735 ILCS 5/13–214.3(b), (c) (West 1996). Before either period expired, this court decided *Best*, holding Public Act 89–7 void in its entirety. *Best*, 179 Ill. 2d at 467. Plaintiffs filed their complaint three weeks after *Best* was decided, but still within the limitations and repose periods.

Defendants argue that these circumstances do not justify a departure from the void *ab initio* doctrine. In other words, the equities are not in plaintiffs' favor. Defendants note that nothing in Public Act 89–7 "compelled" plaintiffs to delay in filing their claim. Defendants also note that Public Act 89–7 and the immediate constitutional challenges to the act received "considerable public attention." Defendants thus question plaintiffs' reliance on a "new, controversial statute."

We agree with defendants that nothing in Public Act 89–7 "compelled" plaintiffs to wait almost two years before filing their complaint. Numerous legitimate reasons, however, may exist for not filing sooner. We will not assume that plaintiffs were less than diligent in pursuing their claim or otherwise acted unreasonably simply because they did not file their complaint within the first three months of what was then a two-year limitations period.

Furthermore, plaintiffs were entitled to rely on the two-year limitations period and six-year repose period because Public Act 89–7 was presumptively valid. See *Wood Dale Public Library District*, 103 Ill. 2d at 429. From the date of its inception, to the date of this court's decision invalidating it, Public Act 89–7 was, for all

intents and purposes, "the law." The changes wrought by Public Act 89–7 were "hard facts" on which individuals, including plaintiffs, necessarily relied "in making decisions and in shaping their conduct." *Lemon*, 411 U.S. at 199, 36 L. Ed. 2d at 160, 93 S. Ct. at 1468.

Whether Public Act 89–7 was "controversial," as defendants maintain, is inapposite. This court, when it considered the challenges to Public Act 89–7 raised in *Best*, began its analysis with the presumption that the act was constitutional. *Best*, 179 Ill. 2d at 377. That presumption was not lessened or compromised simply because the legislation–or more correctly, certain key provisions of the legislation–might be described as "controversial." Similarly, the fact that constitutional challenges to Public Act 89–7 received "considerable public attention" did not require plaintiffs to anticipate with certainty that the change to the repose period for legal malpractice actions–which was not itself under review–would fall, along with the key provisions of the act, ultimately barring their complaint. Indeed, in light of the express severability provision contained in Public Act 89–7 (Pub. Act 89–7, §990, eff. March 9, 1995), plaintiffs should not be faulted for relying on the continuing validity of section 13–214.3(d), notwithstanding the fact that constitutional challenges had been made to other sections of the act.

Our case law firmly establishes that a change in the law shortening a limitations period will not be applied retroactively so as to terminate a cause of action unless the claimant has had a reasonable period of time after the effective date of the change in which to file an action. *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 402 (2001); *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 420 (1986); *Arnold Engineering, Inc. v. Industrial Comm'n*, 72 Ill. 2d 161, 166 (1978); *Meegan v. Village of Tinley Park*, 52 Ill. 2d 354, 359 (1972). The reasonable-time rule also applies to a change in the law affecting a period of repose. *M.E.H. v. L.H.*, 177 Ill. 2d 207, 216-17 (1997); *Mega*, 111 Ill. 2d at 420-22. Underlying the reasonable-time rule are "basic concepts of justice, fairness and equity." *Phillips v. Johnson*, 231 Ill. App. 3d 890, 895 (1992).

Although this judicial "safety valve" was created in response to changes in the law resulting from legislative action (*People v. Bates*, 124 Ill. 2d 81, 87 (1988)), no reasoned basis exists for distinguishing between that situation and the one present here where a change in the

law results from a judicial decision. As our appellate court observed: "A change in a statute of repose by either legislative enactment or judicial decision yields the same result." 349 Ill. App. 3d at 169. Moreover, this court has held that the reasonable-time rule will apply "even in those instances in which the legislature has expressed an intent that the limitations period be applied retroactively." *Guzman*, 196 Ill. 2d at 402; accord *Bates*, 124 Ill. 2d at 87. If the rule applies in those instances, then it should also apply where a change in a limitation or repose period results from one of this court's own decisions. See *Adukia*, 315 Ill. App. 3d at 770-71 (holding that defendant had a reasonable time after *Best* in which to file her contribution action).

In this case, by virtue of our decision in *Best*, no period of time remained in which plaintiffs could file their complaint. Their complaint was instantaneously barred when the prior version of section 13–214.3 became operative again. Accordingly, plaintiffs should have been allowed a reasonable period of time in which to file their complaint. No fixed rule exists for determining what constitutes a reasonable time following a change in the law in which a plaintiff must initiate litigation. Rather, our court has adopted a case-by-case approach. *M.E.H.*, 177 Ill. 2d at 218-19. Using the unexpired portion of the limitations or repose period on which a plaintiff relied to define what constitutes a reasonable time for bringing suit may be appropriate where the unexpired portion is relatively short. *M.E.H.*, 177 Ill. 2d at 218. Here, by defendants' calculations, 5½ weeks of the two-year limitations period and approximately 10 months of the repose period remained at the time *Best* was decided. Plaintiffs filed their complaint within three weeks of *Best*. Under these circumstances, we hold that plaintiffs filed their complaint within a reasonable period of time following the change in the law, and that their complaint is not time-barred.

Allowing plaintiffs' complaint to proceed does not mean, as defendants suggest, that this court is enforcing an unconstitutional statute. Plaintiffs' complaint will proceed not because the amended version of section 13–214.3 governs this dispute, but because the circumstances here justify the exercise of our equitable powers to ameliorate the harsh results from this court's declaration that Public Act 89–7 is void.

Allowing plaintiffs' complaint to proceed also does not mean, as defendants argue, that courts in future cases may now effectively ignore the void *ab initio* doctrine and, with it, the Illinois Constitution. We reiterate that our decision in this case does not signal an abandonment of the void *ab initio* doctrine. Public Act 89–7 remains void in its entirety. Our decision simply recognizes that although this court may declare a statute unconstitutional, it cannot erase the fact of the statute's existence. See *Chicot County*, 308 U.S. at 374, 84 L. Ed. at 333, 60 S. Ct. at 318 ("The past cannot always be erased by a new judicial declaration"); L.Tribe, American Constitutional Law §3–3, at 28 (2d ed. 1988) (" 'the courts have no real power to repeal or abolish a statute, and ... notwithstanding a decision holding it unconstitutional a statute continues to remain on the statute books' "), quoting 39 Ill. Att'y Gen. Op. 22 (1937). Finally, our decision in this case does not require courts in other cases involving different litigants, different statutes, and different circumstances, to rule in favor of the party claiming reliance on a statute later held unconstitutional. Each case must be judged on its own merits.

## CONCLUSION

For the reasons discussed above, we affirm the judgment of the appellate court reversing the judgment of the circuit court and remanding the cause to the circuit court for further proceedings.

*Affirmed.*

JUSTICE KILBRIDE, dissenting:

The majority has declined to follow the clear precedent of this court on the effect of the void *ab initio* doctrine, choosing rather to join what it perceives to be the "modern trend" allowing equitable considerations to overcome the harsh result of its strict application. Although the majority declines to abandon the doctrine entirely, it has effectively limited its application to criminal cases involving fundamental rights. In my view, this is an unjustified substantial departure from precedent, not consonant with the principle of *stare decisis*. Finding the result of its application in this case inequitable, the majority allows the plaintiff's action, untimely filed, and then

˘19˘

refiled after a voluntary dismissal, to proceed. I believe our precedent establishes the applicability of the doctrine in civil cases, and I do not believe equitable considerations mandate a departure from it. Accordingly, I respectfully dissent.

Until today, Illinois has consistently applied the *ab initio* doctrine, as enunciated in *Norton*, over a period of 92 years in both civil and criminal cases. In *Board of Highway Commissioners v. City of Bloomington*, 253 Ill. 164, 176 (1911) this court, citing *Norton*, upheld the right of the board of highway commissioners to recoup moneys received by the city. The roads and bridges statute entitled the city to the taxes. That statute was later declared unconstitutional by this court after the initial collection and payment of the taxes. See *People ex rel. City of Danville v. Fox*, 247 Ill. 402 (1910). This court held that *Fox* required the court not to consider the unconstitutional statute in determining whether the taxing body was entitled to recoup the payment.

In *Mills v. Peoples Gas Light & Coke Co.*, 327 Ill. 508, 535 (1927), citing *Norton* and *City of Bloomington*, the court upheld the right of a litigant not initially asserting the unconstitutionality of a ratemaking statute to challenge it because it had been held void in a previous decision. The court amplified the holding in *Norton*, observing:

> "When a statute is adjudged to be unconstitutional, rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made." *Mills*, 327 Ill. at 535.

In *People v. Schraeberg*, 347 Ill. 392, 393-94 (1932), the court reversed the conviction of a criminal defendant who challenged the array of jurors chosen based on a statute later held unconstitutional in another case. The court, citing *City of Bloomington*, upheld defendant's challenge even though the jury commissioners presumed the statute to be valid.

In *Keslick v. Williams Oil-O-Matic Heating Corp.*, 360 Ill. 552, 554 (1935), the court affirmed judgment for an employer on a widow's claim for damages under the Occupational Diseases Act where the statute was declared unconstitutional and void in a series of

˘20˘

cases decided after the entry of judgment in *Keslick*. The court held that a reversal of the judgment would serve no useful purpose because plaintiff's right of action was predicated on a violation of the unconstitutional statute. Although the court did not cite to *Norton* or Illinois precedent, it is apparent that it applied the void *ab initio* doctrine when the statute had not been declared invalid until after entry of the trial court judgment. In *Van Driel Drug Store, Inc. v. Mahin*, 47 Ill. 2d 378 (1970), the court gave retroactive application to its opinion in *Fiorito v. Jones*, 39 Ill. 2d 531 (1968). *Fiorito* had declared the 1967 amendments to the Service Occupation and Service Use Tax Acts unconstitutional and void. *Van Driel* held that "[w]hen House Bill 2482 was declared unconstitutional in *Fiorito*, it was void *ab initio.* [Citation.] It was at that point wholly inoperative as though it had never been passed ***." *Van Driel*, 47 Ill. 2d at 381-82. Accordingly, an earlier version of the tax statute purportedly repealed by House Bill 2482 remained in effect.

In *People v. Gersch*, 135 Ill. 2d 384 (1990), we again applied the *ab initio* doctrine, invalidating the conviction of a defendant in a jury trial pursuant to the State's assertion of a statutory right to a jury trial. We held that our judgment in a prior case declaring the statute unconstitutional rendered it void *ab initio. Gersch*, 135 Ill. 2d at 390, 399 (citing *Schraeberg* and *Van Driel*). We recognized that scholars had been critical of the doctrine, and noted that courts have struggled with the potentially harsh results of its application, particularly where there has been a good-faith reliance on the validity of a statute. *Gersch*, 135 Ill. 2d at 399. As noted by the majority, we also acknowledged the concerns expressed by the United States Supreme Court in *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 84 L. Ed. 329, 60 S. Ct. 317 (1940). Slip op. at 11. Nevertheless, we found no persuasive reason to depart from our established precedent. *Gersch*, 135 Ill. 2d at 401.

Here, the majority attempts to distinguish *Gersch* on the basis that its holding was mandated because it was necessary to correct the "wrongs wrought" by the unconstitutional statute. Conversely, the limitations provision at issue here did not perpetrate a wrong against defendants requiring correction. Slip op. at 7. The majority dismisses the declaration of the limitations provision's invalidity as simply "collateral damage" from the force of the determination in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), that the core

provisions of Public Act 89–7 were unconstitutional. Slip op. at 7. This statement ignores the analysis in *Best* supporting the holding that the entire Act was unconstitutional.

*Best* held that the core provisions declared unconstitutional were inseparable from the remainder of Public Act 89–7 and, therefore, the legislation must fail *in toto*. *Best*, 179 Ill. 2d at 467. The residual provisions, including the limitations period at issue here, were unenforceable because to hold otherwise would amount to judicial legislation in violation of the separation of powers provisions of our constitution (see Ill. Const. 1970, art. II, §1). *Best*, 179 Ill. 2d at 467. We thus were compelled to invalidate the entire Act because of a constitutional requirement sharing importance, in my view, with the determination of special legislation and privacy rights violations supporting our rejection of the Act's core provisions. Thus, the rationale for holding the limitations provision invalid rests on the same firm constitutional foundation as our analysis on the core provisions. Accordingly, the void *ab initio* doctrine's applicability should not be determined by the reason a statute is declared unconstitutional, and the distinction drawn by the majority does not support a departure from our holding in *Gersch*.

The majority also fears a "Catch-22" if individuals must suffer the consequences of relying on the presumptive validity of a legislative enactment later held unconstitutional. Slip op. at 9-10. This fear is unwarranted. Presumptive statutory validity is overcome every time we declare a statute unconstitutional. Further, individuals know that legislative powers are limited and that laws enacted outside the range of those powers are void. Thus, prospective litigants must always be aware of the potential for judicial determinations affecting the validity of legislation.

As the majority correctly observes, we implicitly applied the void *ab initio* doctrine in *Petersen v. Wallach*, 198 Ill. 2d 439 (2002), a case involving the same limitations statute at issue here. Slip op. at 8. The complaint in *Petersen* was filed on November 9, 1998, alleging attorney malpractice in estate planning services rendered in 1989 and 1991 for plaintiff's mother, who died on November 10, 1996. *Best* was decided on December 18, 1997. We observed in a footnote:

> "Public Act 89–7 [citation] partially amended section 13–214.3 by repealing subsection (d). The public act was held

unconstitutional in its entirety by this court in *Best v. Taylor Machine Works* [citation]. As of this writing, however, the General Assembly has not addressed our holding in *Best* with regard to section 13−214.3 and the text of that section remains in its form prior to our decision in *Best*." *Petersen*, 198 Ill. 2d at 443 n.1.

We then construed section 13−214.3(d) and determined the plain language of that section required application of its provisions to all cases of attorney malpractice when the injury did not occur until the death of the client, not just those involving probate distributions. Hence, we determined paragraph (d) of the section created an exception to the six-year repose period established in paragraph (c) of the same section (735 ILCS 5/13−214.3(c) (West 1994)). We therefore concluded plaintiff's claim was not time-barred, even though it was not asserted within the six-year repose period. *Petersen*, 198 Ill. 2d at 448. We made this determination despite defendant's argument that our disposition could lead to an absurd or unjust result, noting "[t]he possibility of an unjust or absurd result is generally not enough to avoid the application of a clearly worded statute." *Petersen*, 198 Ill. 2d at 447.

The majority dismisses the significance of our holding in *Petersen*, arguing that we were not asked to consider whether it is appropriate to temper the doctrine's harsh results. Slip op. at 8-9. Yet the version of the limitations period held unconstitutional in *Best* did not contain the probate exception to the statute of repose, and would thus have extinguished plaintiff's action a year before filing it. Presumably, defendant's attorneys were aware of the application of the void *ab initio* doctrine, and thus asserted the earlier version of the statute as a defense, rather than attempting to rely on an unconstitutional statute.

Most recently, we applied the doctrine in *Jorgensen v. Blagojevich*, 211 Ill. 2d 286, 309 (2004), holding that a statute purportedly eliminating cost-of-living adjustments (COLA) to judicial salaries in 2003 was unconstitutional and void *ab initio*. The majority distinguishes *Jorgensen* because it involved the enforcement of an unconstitutional statute rather than a determination of the equities. Slip op. at 9. Nonetheless, the legislature and the Governor relied on the COLA curtailments in budget planning, and our decision

undoubtedly impacted those budgetary presumptions. Our opinion rested, however, purely on constitutional grounds and we did not find budgetary impact dispositive.

Our appellate court has also recently applied the void *ab initio* doctrine in two persuasive opinions. In *Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812 (2001), the court applied the void *ab initio* doctrine to another statute amended by Public Act 89‒7, section 13‒217 of the Code of Civil Procedure (735 ILCS 5/13‒217 (West 2002)). Before the amendment, section 13‒217 allowed refiling after voluntary dismissal within the later of one year or the expiration of the statute of limitations. Prior to the passage of Public Act 89‒7, this court held that only one refiling was permitted, despite expiration of the statute of limitations. *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252 (1991). Upon enactment of Public Act 89‒7, the statute allowed refiling after voluntary dismissal only if the limitations period had not expired.

The plaintiff, having twice voluntarily dismissed his case, argued the amendments to section 13‒217 permitted multiple refilings and were intended to overcome the *Flesner* holding. The defendant asserted the void *ab initio* doctrine revived the earlier version of the statute and *Flesner* was still applicable. The *Hurst* court rejected plaintiff's argument that *Best* should not be applied because he relied in good faith on the new statute, and retroactive application would result in an injustice.

The appellate court noted *Gersch* recognized courts have struggled with the potentially harsh results of the void *ab initio* doctrine, but nevertheless found no persuasive policy argument for departing from the doctrine and gave no indication that the application of the long-established principle is inapplicable in civil cases. *Hurst*, 323 Ill. App. 3d at 821. Despite the potential for harsh results, the court held: "[t]he effect of enacting an unconstitutional act is to leave the law in force as it was before the enactment of the unconstitutional act." *Hurst* 323 Ill. App. 3d at 822. Consequently, the court held the provisions of section 13‒217 in effect prior to the enactment of Public Act 89‒7 were applicable. *Hurst*, 323 Ill. App. 3d at 822.

In *Poullette v. Silverstein*, 328 Ill. App. 3d 791 (2002), the court applied the earlier version of the limitations statute at issue here to a

claim against an attorney who had rendered estate planning services to a client who died in 1997, the same year as *Best*. The court noted in a footnote that *Best* had repealed Public Act 89−7 in its entirety and, therefore, the prior version of section 13−214.3 remained in effect. *Poullette*, 328 Ill. App. 3d at 795 n.1. The court then construed paragraph (d) of the statute to require plaintiff to file suit within six months after admission of the testator's will to probate, even though it shortened the time to file her claim. *Poullette*, 328 Ill. App. 3d at 796.

It is apparent from this review of Illinois precedent that this court and our appellate court have consistently applied the void *ab initio* doctrine in both civil and criminal cases from 1912 until 2004, when the appellate court in this case departed from the doctrine on equitable grounds. Despite our Illinois precedent, the majority reviews cases from federal and foreign jurisdictions, finding equitable considerations mandate abandonment of the void *ab initio* doctrine. Slip op. at 11-15. As the majority concedes, other jurisdictions have, however, strictly applied it. Slip op. at 10. My research discloses no clear majority rule. I sympathize with the concern for equitable considerations expressed in several opinions critical of the doctrine. Nevertheless, I discern no compelling reason to depart from the void *ab initio* doctrine.

The majority places particular emphasis on the United States Supreme Court's *Chicot County* discussion of the potential inequities of a strict application of the doctrine. Slip op at 11. In *Chicot County*, the Supreme Court was considering whether to apply the doctrine in a collateral challenge to a bankruptcy decree when the bankruptcy court's determination depended on a statute later held unconstitutional. The Supreme Court noted that lower courts had proceeded on the theory that the unconstitutional statute was inoperative, conferring no rights and imposing no duties. The Court observed:

> "It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be

considered in various aspects–with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination." *Chicot County*, 308 U.S. at 374, 84 L. Ed. at 332-33, 60 S. Ct. at 318-19.

The Court then determined that a decision invalidating a statute relied on by the district bankruptcy court did not subject the court's decree to a collateral attack and that *res judicata* applied to bar the asserted claim. The Court noted the issue of the validity of the statute was not raised in the bankruptcy proceeding and there was no attempt to review the decree. *Chicot County*, 308 U.S. at 375-76, 84 L. Ed. at 333, 60 S. Ct. at 319.

This case, however, does not involve a collateral attack on a judgment. This is a direct review of the dismissal of a complaint where the application of section 13–214.3(d) was raised and fully argued by the parties. Thus, despite the recognition in *Chicot County* of potential problems caused by the automatic application of the void *ab initio* doctrine, the holding in that case is not applicable. Issues regarding the finality of judgments are not implicated under the circumstances of this case.

The majority also cites a plurality opinion from Chief Justice Burger in *Lemon v. Kurtzman*, acknowledging the difficulty in attempting to reconcile " 'the constitutional interests reflected in a new rule of law with reliance interests founded upon the old.' " Slip op. at 11, quoting *Lemon v. Kurtzman*, 411 U.S. 192, 198, 36 L. Ed. 2d 151, 160, 93 S. Ct. 1463, 1468 (1973). This difficulty, however, does not compel abandoning the void *ab initio* doctrine in favor of a case by case *ad hoc* determination of the importance of equitable concerns. Departure from the doctrine in this case, where the balance of the equities is not as clear cut as the majority suggests, would create uncertainty in gauging the continued vitality of statutes declared unconstitutional. Inevitably, the majority's approach will result in holding statutes void in some circumstances, but not in others. Thus, stability in statutory construction will be adversely impacted.

In my view, departure from the doctrine is unwarranted because even if it were conceded that it should not be applied in cases where the litigants reasonably relied on statutes later held unconstitutional, the plaintiffs in this case have not demonstrated that their reliance was reasonable. The facts simply do not establish plaintiffs' reasonable reliance on the limitations provision in Public Act 89–7. Plaintiffs could have filed their action after learning of the alleged malpractice any time prior to the estate claim date, April 26, 1996. They chose not to file, even though constitutional challenges to Public Act 89–7 were filed immediately after its passage and were widely reported in legal publications. See, *e.g.*, C. Rodin, *With "Tort Reform" Rush Over, Judicial Review Can Proceed*, Chi. Daily L. Bull., April 22, 1995, at 22; J. Zimmerman, *A Review of the Illinois Civil Justice Reform Act of 1995*, 83 Ill. B.J. 282 (1995). Further, the circuit court of Madison County, in two cases consolidated for review by this court in *Best*, held the entire Act unconstitutional, noting that the Act constituted a "wholesale reconstruction of the judiciary." See *Best*, 179 Ill. 2d at 380. Thus, long before a definitive pronouncement by this court, a prudent attorney could have taken notice that reliance on any provisions of the Act could be problematic.

Additionally, plaintiffs' action remained pending in the circuit court of Cook County from its filing on January 8, 1998, until they voluntarily dismissed it on September 5, 2001, nearly three years later and four years after publication of *Best.* The case was refiled in Lake County on April 10, 2002. Our decision in *Petersen*, applying the void *ab initio* doctrine, was filed January 25, 2002. Thus, it is not surprising that defendants pleaded the earlier statute of limitations as a defense in response to the refiled complaint. It cannot be reasonably suggested that defendants' assertion of the limitations defense was unwarranted when this court had again applied the void *ab initio* doctrine and validated the earlier version of the statute just three months before plaintiffs' refiling. Indeed, it would seem that plaintiffs might have avoided the entire problem presented by this case had they not dismissed the Cook County action. Under these circumstances, I do not believe the equities weigh so heavily in favor of plaintiffs that departure from the long established void *ab initio* doctrine is merited. Accordingly, I respectfully dissent.

CHIEF JUSTICE THOMAS joins in this dissent.